IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**DEBRA MAYS JACKSON**   PLAINTIFF

VS.   CIVIL ACTION NO. 3:23-cv-3095-KHJ-MTP

**TOM DUFF, IN HIS INDIVIDUAL
AND OFFICIAL CAPACITIES, STEVEN
CUNNINGHAM, IN HIS INDIVIDUAL AND OFFICIAL
CAPACITIES, BRUCE MARTIN, IN HIS INDIVIDUAL
AND OFFICIAL CAPACITIES, JEANNE CARTER,
IN HER INDIVIDUAL AND OFFICIAL CAPACITIES,
CHIP MORGAN, IN HIS INDIVIDUAL AND OFFICIAL
CAPACITIES, GEE OGLETREE, IN HIS INDIVIDUAL
AND OFFICIAL CAPACITIES, HAL PARKER, IN HIS
INDIVIDUAL AND OFFICIAL CAPACITIES, J. WATT
STARR, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES,
ALFRED MCNAIR, IN HIS INDIVIDUAL AND
OFFICIAL CAPACITIES, GLENN MCCOLLOUGH, IN HIS
INDIVIDUAL AND OFFICIAL CAPACITIES,
SHANE HOOPER, IN HIS INDIVIDUAL AND OFFICIAL
CAPACITIES, FORD DYE, IN HIS INDIVIDUAL AND
OFFICIAL CAPACITIES, ALFRED RANKINS JR.,
IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES,
MISSISSIPPI INSTITUTION OF HIGHER LEARNING,
AND JOHN DOES 1-12**   DEFENDANTS

**COMPLAINT**
**JURY TRIAL DEMANDED**

**COMES NOW**, Plaintiff Debra Mays Jackson, by and through her attorney, and files this her Complaint, as follows:

1

## JURISDICTION

1. This suit is authorized and instituted pursuant to the Equal Protection Clause of the Fourteenth Amendment of the Constitution of the United States by and through 42 U.S.C. § 1983. Jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1331.

## VENUE

2. Venue is proper pursuant to 28 U.S.C. § 1391(b). A substantial part of the events or omissions complained of by Plaintiff occurred in the Northern Division of Southern District of Mississippi.

## PARTIES

3. Plaintiff Debra Mays Jackson (hereinafter "Jackson") is an adult resident citizen of Hinds County, Mississippi.

4. Defendant Tom Duff ("Duff") is a member of the Mississippi Institutions of Higher Learning. Duff is being sued in his individual and official capacities. He may be served with process of this Court wherever he may be found.

5. Defendant Steven Cunningham ("Cunningham") is a member of the IHL. Cunningham is being sued in his individual and official capacities. He may be served with process of this Court wherever he may be found.

6. Defendant Bruce Martin ("Martin") is a member of the IHL. Martin is being sued in his individual and official capacities. He may be served with process of this Court wherever he may be found.

7. Defendant Jeanne Carter Luckey ("Luckey") is a member of the IHL. Luckey is being sued in her individual and official capacities. She may be served with process of this Court

wherever she may be found.

8. Defendant Chip Morgan ("Morgan") is a member of the IHL. Morgan is being sued in his individual and official capacities. He may be served with process of this Court wherever he may be found.

9. Defendant Gee Olgetree ("Olgetree") is a member of the IHL. Olgetree is being sued in his individual and official capacities. He may be served with process of this Court wherever he may be found.

10. Defendant Hal Parker ("Parker") is a member of the IHL. Parker is being sued in his individual and official capacities. He may be served with process of this Court wherever he may be found.

11. Defendant J. Watt Starr ("Star") is a member of the IHL. Starr is being sued in his individual and official capacities. He may be served with process of this Court wherever he may be found.

12. Defendant Alfred McNair ("McNair") is a member of the IHL. McNair is being sued in his individual and official capacities. He may be served with process of this Court wherever he may be found.

13. Defendant Glenn McCollough ("McCollough") is a member of the IHL. McCollough is being sued in his individual and official capacities. He may be served with process of this Court wherever he may be found.

14. Defendant Shane Hooper ("Hooper") is a member of the IHL. Hooper is being sued in his individual and official capacities. He may be served with process of this Court wherever he may be found.

15.     Defendant Ford Dye ("Dye") is a member of the IHL.  Dye is being sued in his individual and official capacities.  He may be served with process of this Court wherever he may be found.

16.     Defendant Alfred Rankins ("Rankins") is the Commissioner of IHL.  Rankins is being sued in his individual and official capacities.  He may be served with process of this Court wherever he may be found.

17.     The Institutions of Higher Learning ("IHL") is a political subdivision of the State of Mississippi. The IHL board is empowered to select the Institutional Executive Officer ("IEO"), more commonly called the President, of Jackson State University ("JSU"). IHL may be served with process by service on Lynn Fitch, Attorney General of the State of Mississippi, 450 High Street, Suite 1200, Jackson, Ms. 39201.

18.     The true identities of John Does 1-12 are individuals whose identities are unknown to the Plaintiff. John Does 1-12 are individuals who advised IHL board members not to afford all qualified applicants an opportunity to seek the position of President of JSU. John Does 1-12 also urged IHL board members to name Hudson President without conducting an adequate investigation to determine Hudson's qualifications and fitness to sit in the highest position at JSU and/or permitting employees at JSU, who were supervised by Hudson, to investigate reports that Hudson sent an unwelcomed and uninvited photograph of his genitalia to a JSU employee while he was serving as the Interim President and demoted another JSU employee who complained about Hudson's unlawful conduct.  Had IHL officials adequately investigated Hudson, they would have discovered that Hudson, while serving as the Interim

President, sent unwelcomed and uninvited photographs of his genitalia to a JSU student.

## STATEMENT OF FACTS

19.     On February 10, 2020, William Bynum ("Bynum"), JSU's 11th President, resigned after he was charged with prostitution.[1]  Prior to Bynum's resignation, Debra Mays Jackson, a female, was JSU's Vice President and Chief of Staff.  As Vice President and Chief of Staff, Debra Mays Jackson supervised Hudson.  Instead of elevating Debra Mays Jackson to the position of Interim President, the defendants tapped Hudson, a male, to serve in the position.

20.     On the day of Hudson's elevation, at approximately 11:30 a.m., Hudson approached Debra Mays Jackson and told her he was not qualified or prepared to serve as Interim President.  Hudson gave Debra Mays Jackson a $25,000.00 salary increase to agree to remain in her position as Vice President and Chief of Staff.  Debra Mays Jackson, who earned her bachelor's, master's, and specialist's degrees from JSU and her doctorate from Mississippi State University, agreed to continue Hudson in his new Interim President role.

21.     On February 13, 2020, three days after Hudson was named JSU's Interim President, IHL Commissioner Alfred Rankins ("Rankins") met with JSU employees and announced Hudson would not be permitted to apply for the position of President.  Rankins claimed a national search would be conducted to determine who would serve as JSU's 12th President.

22.     Eight months later, IHL hosted a ZOOM call to receive input from constituents purportedly to determine the characteristics and qualifications they wanted the new President to possess.  Prior to the ZOOM call, Hudson, working with his close friends at

---

[1]     William Bynum appealed his convictions in Clinton Municipal Court to Hinds County County Court where the charges were dismissed.

IHL, selected certain individuals to speak on Hudson's behalf during the ZOOM call. Hudson's supporters urged IHL to name Hudson as JSU's 12th President. Other constituents on the ZOOM call pressed IHL to conduct a national search as Rankins announced IHL would do in February of 2020.

23. At all times relevant herein, IHL board members held IHL out as an equal opportunity employer. According to its policy, IHL is required to base "its employment decisions upon an individual's merit rather than general characteristics or classifications which are not relevant to one's ability to effectively perform his or her duties. Therefore, employment decisions are made without discrimination in regard to race, age, color, religion, sex, sexual orientation, national origin, veteran status, or physical and/or mental disability, so long as the individual successfully performs the functions of his or her job, either with or without reasonable accommodations."

24. Notwithstanding IHL's equal employment opportunity policy, on November 19, 2020, IHL board member Steven Cunningham announced IHL's unanimous decision to forego a national search and to name Hudson as President. IHL has only named two females as Presidents of its historically black colleges and universities. JSU's only female president, Carolyn Meyers, and Felecia Naves, former President of Alcorn State University, were selected after IHL conducted national searches. Carolyn Meyers replaced Ronald Mason. Felecia Naves replaced Alfred Rankins, Jr.

25. Upon information and belief, although IHL commenced a national search to replace Carolyn Meyers, it abandoned the national search after Roslyn Clark Artis, a female, emerged as the top contender for President of JSU. Rather than name a highly qualified

female to replace Carolyn Meyers, IHL selected Bynum as JSU's 11th President, even though Bynum was not a finalist for the position.

26. Three years later after Bynum was named President and the day Bynum resigned in disgrace after being charged with prostitution, Hudson became the beneficiary of IHL's largesse. Upon information and belief, before naming Hudson as President of JSU, IHL Commissioner Alfred Rankins Jr. and other IHL officials knew or should have known Hudson had engaged in conduct unbecoming a college president. Namely, IHL Commissioner Alfred Rankins Jr. knew or should have known that Hudson, while serving as Interim President, sent an employee an unwelcomed and uninvited photograph of his genitalia to a JSU employee and demoted another employee who complained about Hudson's conduct was unlawful and ran afoul of Title VII of the Civil Rights Act of 1964.

27. Notwithstanding Hudson's outrageous and unlawful conduct, IHL bypassed a national search and named Hudson President of JSU. Upon information and belief, had IHL officials bothered to properly investigate Hudson, they would have discovered that Hudson also sent unwelcomed and uninvited photographs of his genitalia to a student at JSU.

28. After receiving a hefty raise in February of 2023, Hudson, who often told JSU employees that he did not want to be like Bynum, reportedly was placed on administrative leave in March. Hudson, however, was allowed to continue to reside in the President's home on campus until the end of May even though IHL officials at that time knew or should have known about Hudson's unlawful and outrageous conduct.

29. Upon information and belief, on March 6, 2023, IHL board members had planned to name Marcus Thompson, IHL's then Deputy Commissioner and Chief Administrative

Officer, as Interim President of JSU. Upon information and belief, the plan was ditched when Elayne Hayes Anthony garnered more support than Marcus Thompson during the executive session to discuss the matter.

30. Upon information and belief, unlike Hudson, who was named Interim President of JSU, Elayne Hayes Anthony was named Acting President of JSU. Upon information and belief, Elayne Hayes Anthony was not given the autonomy Hudson was extended when he was named Interim President.

31. Before IHL promoted Hudson to the President's position, Debra Mays Jackson served as JSU's Vice President and Chief of Staff from 2017 until 2020. Debra Mays Jackson was second in charge and required to represent JSU during events, university meetings, and IHL board meetings when Bynum was absent. She also served as Bynum's proxy.

32. As Vice President and Chief of Staff, Debra Mays Jackson was responsible for oversight in the areas of 1) Enrollment Management (recruitment, admissions, financial aid, registrar); 2) Student Affairs (deans of students, student life, housing, and residence life, center for student engagement and leadership, veterans & military center, university health center, disability services ADA compliance, careers, student conduct, the Latasha Norman Center and judicial affairs); 3) Student Success (university advising center, student success strategic initiatives); 4) Title III; 5) Construction Project Manager; 6) Public Safety; 7) Internal Audit; 8) Governmental Relations; and 9) Special Assistant to the President.

33. Before joining JSU, Debra Mays Jackson served as Vice President of the Utica

and Vicksburg campuses at Hinds Community College. She also supervised all operations of the two campuses which included Academic Affairs, Student Affairs, Career and Technical, Workforce Placement, Housing, Maintenance & Facilities, Financial Aid, Enrollment Management, Registrar, Recruitment, and Title III/HBCU. In addition, Debra Mays Jackson supervised EEOC/Civil Rights Affairs and was the college representative for all six Hinds Community College campuses.

34. Before Bynum was named President, Hudson served as JSU's Diversity and Equal Opportunity Officer/Title IX Coordinator from 2012 to 2017. When Rod Paige was selected to serve as Interim President of JSU after Carolyn Meyers abruptly resigned, Hudson worked in the Interim President's office.

35. During Hudson's reign as JSU's Diversity and Equal Opportunity Officer, JSU was sued ----- for discriminating and retaliating against its employees. JSU settled nearly all of the discrimination lawsuits.

36. In his capacity as JSU's Diversity and Equal Opportunity Officer, Hudson did not supervise any employees.

37. Unlike Hudson, Debra Mays Jackson was selected to participate in the American Association of State Colleges and Universities (AASCU) 2020 Millennium Leadership Initiative (MLI) Class Group. MLI is a premier higher education leadership development program that was created by the African American Presidents of AASCUs to prepare traditional higher executive leaders for university and college presidencies and chancellorships. MLI is one of the most successful training platforms for higher education leaders. Its participants are selected through 1) recommendations from

presidents/chancellors; and 2) extensive educational careers. Debra Mays Jackson completed the program in 2021, she garnered the support, and mentorship and earned the respect of several Historically Black Colleges and Universities (HBCU) and Predominately White Institutions (PWI) sitting presidents. 38. The actions of IHL board members who hired Hudson without affording Debra Mays Jackson, who was clearly more qualified to serve as JSU's 12th President, violated Debra Mays Jackson's constitutional right to be free of sex discrimination and to be treated the same as similarly situated males. In addition, Hudson's preselection as President of JSU, coupled with information that Hudson was unfit to serve as President, demonstrates that the IHL board members, individually and officially, were motivated by sex animus.

39. No reasonable IHL board member or commissioner would have elevated Thomas from Interim President to President when they knew or should have known that JSU's Diversity and Equal Opportunity Officer had sexually harassed an employee and demoted another employee when he spoke out about Hudson's outrageous and unlawful conduct.

40. Before Hudson was promoted to the position of President, IHL allowed JSU employees, who were supervised by Hudson, to investigate complaints Hudson violated Title VII and the Fourteenth Amendment to the United States Constitution by sending a JSU an uninvited and unwelcomed photo of his genitalia and demoting another employee who spoke out about Hudson's unlawful conduct.

41. At the time of Hudson's promotion, IHL knew when Hudson was the diversity officer, JSU officials, including but not limited to Hudson IHL concealed complaints of sex discrimination and sexual harassment that female employees suffered at the hands of a male

dean. After Hudson failed to investigate the allegations contained in the anonymous complaint, the female employees filed an anonymous complaint with IHL. The male dean announced his retirement after IHL reportedly launched an investigation.

42. IHL officials failed to properly vet Hudson to determine his fitness to serve as Interim President and President. IHL officials knew or should have known that Hudson was not fit to serve as President of JSU as he had demonstrated that he could not be trusted to protect JSU's students and employees from sex discrimination and sexual harassment.

43. As a result of the conduct of IHL board members and Commissioner Alfred Rankins, Debra Mays Jackson was subjected to sex discrimination when she was passed over for a position even though she was clearly more qualified than Hudson. As a proximate cause of the conduct of IHL board members, Debra Mays Jackson was demoted from her position as Vice President and Chief of Staff and forced to move out of her office.

44. At all times relevant herein, Debra Mays Jackson had a clearly established right to be free of sex discrimination in the workplace and the conduct of each IHL board member and IHL Commissioner was objectively unreasonable.

## CAUSES OF ACTION

45. In this complaint when it is alleged that IHL committed any act or omission, it is meant that IHL's officers, directors, vice presidents, agents, servants, or employees committed such acts or omissions and that at the time such acts, commission or omission was committed, it was done with the full authorization, ratification or approval of IHL or was it done in the routine normal course and scope of employment of IHL officers,

directors, vice presidents, agents, servants or employees unless otherwise stated in this Complaint.

## 1983 SEX DISCRIMINATION

46.     Debra Mays Jackson realleges all prior paragraphs of the Complaint as if set out here in full.

47.     Debra Mays Jackson was clearly more qualified for the position of President of JSU when Hudson was named President of JSU. Debra Mays Jackson's gender was a motivating factor in the employment and compensation-related decisions made regarding her. At the time of IHL's illegal actions, Debra Mays Jackson had a clearly established right to be clear of discrimination on account of her sex. The conduct of IHL was objectively unreasonable.

48.     As a result of the actions of the defendants, Debra Mays Jackson suffered damages in the past and will suffer damages in the future.

## DAMAGES

49.     Because of the foregoing misconduct of the defendants, Debra Mays Jackson sustained pain and suffering, physical injury, great mental distress, depression, insomnia, shock, fright, and humiliation. Debra Mays Jackson has been damaged in an amount exceeding the jurisdictional requirements of this Court.

## RELIEF

50.     Plaintiff requests that the Court issue the following relief:

   a. Award Debra Mays Jackson prospective relief of instatement to the position of President and compensatory damages for the intentional sex discrimination

(Section 1983, Fourteenth Amendment) Debra Mays Jackson suffered at the hands of IHL board members and IHL Commissioner Alfred Rankins Jr. in an amount to be determined by a jury of her peers.

b. Award Debra Mays Jackson attorney fees, costs, and expenses of litigation and.

c. Award Debra Mays Jackson such other relief to which Plaintiff may be entitled under law.

**WHEREFORE PREMISES CONSIDERED**, Plaintiff demands judgment against the Defendants in an amount exceeding the jurisdictional requirements of this Court, all together with the costs and disbursement action, including attorneys' fees, plus interest, and for any other relief which this Court deems just and proper.

**RESPECTFULLY SUBMITTED** this, the 16th of November 2023.

**DEBRA MAYS JACKSON**

By: /s/ Lisa M. Ross
Lisa M. Ross (MSB#9755)
Post Office Box 11264
Jackson, MS 39283-1264
(601) 981-7900 (telephone)
(601) 981-7917 (facsimile)
lross@lmrossatlaw.com

Attorney for Plaintiff