IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

DEBRA MAYS JACKSON PLAINTIFF

VS. CIVIL ACTION NO. 3:23-cv-03095-KHJ-MTP

TOM DUFF, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES, STEVEN CUNNINGHAM, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES, BRUCE MARTIN, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES, JEANNE CARTER, IN HER INDIVIDUAL AND OFFICIAL CAPACITIES, CHIP MORGAN, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES, GEE OGLETREE, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES, HAL PARKER, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES, J. WATT STARR, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES, ALFRED MCNAIR, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES, GLENN MCCULLOUGH, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES, SHANE HOOPER, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES, FORD DYE, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES, ALFRED RANKINS, JR., IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES, MISSISSIPPI INSTITUTION OF HIGHER LEARNING, AND JOHN DOES 1-12 DEFENDANTS

**BRIEF IN SUPPORT OF INDIVIDUAL DEFENDANTS' MOTION TO DISMISS AND FOR QUALIFIED IMMUNITY**

Plaintiff Debra Mays Jackson has sued individually a litany of current and former Trustees of the Mississippi Board of Trustees of State Institutions of Higher Learning and its Commissioner (the "Individual Defendants"),[1] claiming that each violated Section 1983 based on

[1] Mays Jackson has misnamed Jeanne Carter Luckey as "Jeanne Carter," Gee Ogletree as "Gee Olgetree", J. Walt Starr as "J. Watt Starr", "Alfred McNair, Jr." as "Alfred McNair", and Glenn McCullough as "Glenn McCollough". Notably, McCullough never even served as a Trustee for the IHL Board during the operative time period. *See* https://www.wapt.com/article/mccullough-named-director-of-mda/2093473. He also was not included in Plaintiff's First Amended Complaint, was not a party to the Individual Defendants' Motion for Enlargement of Time to Respond [Doc. 5], and Plaintiff has never attempted to separately serve McCullough.

the IHL Board's failure to hire her as the President of Jackson State University in 2020 and 2023.[2] Mays Jackson fails to plead any fact allegations as to most of the Individual Defendants, however, and her conclusory assertions are insufficient to overcome their qualified immunity. This Court should dismiss her claims against each of the Individual Defendants.

***1. Relevant Facts***[3]

Now in its third iteration, Mays Jackson's complaint remains long on grievances but short on facts giving rise to plausible liability for the mix of current and former IHL Board trustees and administrators named as Individual Defendants.[4] In addition to the lack of alleged individual factual involvement, Mays Jackson has seemingly named the individual trustees at random, excluding some current trustees, including other former trustees and one who didn't serve at all during the relevant periods, and then failing to differentiate between the trustees who voted on the 2020 appointment of Thomas Hudson as the President of Jackson State University versus the 2023 appointment of Marcus Thompson. Despite Mays Jackson's scattershot approach, however, the facts relevant to the Individual Defendants' Motion to Dismiss are straight-forward.

Pursuant to Mississippi Code Section 37-101-1, the IHL Board is granted management and control of Mississippi's eight public universities, including Jackson State University. Under Article 8, Section 213 A of the Mississippi Constitution and Mississippi Code Section 37-101-15

---

[2] Mays Jackson sued the Individual Defendants in both their individual and official capacities. Because the official capacity claims are claims against the Board of Trustees of State Institutions of Higher Learning, itself (the "IHL Board"), this Motion is filed on behalf of the Individual Trustees in their individual capacities only. *See Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099 (1985).

[3] Because the Court must accept the well-pleaded facts of the Complaint as true for purposes of Defendants' 12(b)(6) motion, the facts are presented in that light. *In re Great Lakes Dredge & Dock Co., LLC*, 624 F.3d 201, 210 (5th Cir. 2010). Defendants reserve the right to contest any alleged fact.

[4] Mays Jackson filed her initial Complaint on November 16, 2023 [Doc. 1]. She filed her First Amended Complaint on November 17, 2023 [Doc. 2]. She then amended her Complaint again with leave of Court on February 15, 2024, but titled her second amended pleading "Complaint" [Doc. 9]. All references to Plaintiff's Complaint in this motion are to Plaintiff's second amended Complaint [Doc. 9].

(f), the IHL Board has the power and authority to elect the heads of the various State institutions of higher learning.

Pursuant to that authority, on November 19, 2020, the IHL Board voted to approve hiring Thomas Hudson as President of Jackson State University. *See* Compl. p. 6, ¶ 26 [Doc. 9]; *see also* Ex. "A" to Mtn. (IHL Board Minutes dated Nov. 19, 2020), p. 35.[5] Despite being named defendants, Trustee Tom Duff was absent for the vote, and Individual Defendant Glenn McCullough was not even serving on the Board of Trustees at the time. Ex. "A" to Mtn. (IHL Board Minutes dated Nov. 19, 2020), p. 35. As to the remaining defendant Trustees, Mays Jackson fails to offer any individualized fact allegations, instead generically asserting that "Rankins and [IHL administrative deputy] Thompson working with Steven Cunningham, the chair of the search committee to [appoint the JSU President] and a Hudson supporter, convinced IHL board members to name Hudson as JSU's 12th President." Compl. p. 6 ¶ 26.

According to Mays Jackson, "[e]ach of the IHL board members named as defendants, except Tom Duff, voted to hire Hudson as President." *Id*. Mays Jackson concludes, without any supporting allegations, that "[a]ll of the IHL board members knew or should have known of Hudson's [prior] unlawful conduct [under Title VII] inasmuch as Commissioner Rankins and his deputy Marcus Thompson was privy to said information." *Id*. Notably, however, Mays Jackson fails to allege that she applied for the position of President in 2020, and her Complaint wholly fails to identify how the individual trustees violated her constitutional rights when the IHL Board failed to appoint her to a position she did not apply for. *See* Compl. p. 7, ¶ 27.

---

[5] Publicly available at http://www.mississippi.edu/board/. *See Norris v. Hearst Trust*, 500 F.3d 454, 461 n. 9 (5th Cir. 2007) ("it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of maters of public record.").

Mays Jackson's allegations regarding the 2023 presidential search, which resulted in the appointment of Marcus Thompson, fare no better. While she at least alleges she applied for that position, her sex discrimination claim appears premised entirely on her allegation that "Cunningham, Ormella Cummings, Bruce Martin, Gee Olgetree [sic] and Hal Parker, members of the search committee to replace Hudson, sabotaged Mays-Jackson's efforts to become JSU's 13th President." Compl. p. 11, ¶ 45. She does not further detail these "sabotage" efforts but nakedly asserts: "[a]ware of Mays-Jackson's 2021 EEOC Complaint, the selection committee members narrowed the pool of applicants and decided Mays-Jackson would not be interviewed." *Id*.

Again, however, Mays Jackson pleads no facts as to the alleged conduct of the individual trustees, and fails to articulate how any of them purportedly violated any constitutional right. Even more glaringly, while she again asserts this claim against all individual defendants, McCullough, Hooper, and Dye were not even serving on the Board of Trustees at the time of the 2023 appointment. Ex. "B" to Mtn. (IHL Board Minutes dated Nov. 16, 2023), p. 1. Trustee McNair abstained from the vote, and Trustee Morgan was absent. *Id*. at pp. 26-27. While she asserts that the trustees denied her an opportunity to interview and voted with the other trustees to hire Thompson, her claims against the Individual Defendants appear premised entirely on the Board's collective action and not any individual actions undertaken by any of the Individual Defendants. Based on Mays Jacksons' pleading, the Individual Defendants are entitled to qualified immunity and the Court should dismiss them with prejudice.

***2. Standard of Review***

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal for failure to state a claim upon which relief may be granted.

> To avoid dismissal, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. To be plausible, the complaint's factual allegations must be enough to raise a right to relief above the speculative level. In deciding whether the complaint states a valid claim for relief, we accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff. We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.

*In re Great Lakes Dredge & Dock Co., LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (internal quotations and cites omitted). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n] – that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting FED. R. CIV. P. 8(a)(2)).[6]

### *3. Mays Jackson's shotgun pleading is insufficient to assert a claim against the Individual Defendants.*

Federal Rule of Civil Procedure 8 requires that pleadings contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. The use of a "shotgun pleading" is insufficient to meet that burden, and occurs when the complaint either: a) relies on multiple counts "where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint," b) is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action," c) does not separate into a different count each cause of action or claim for relief, or d) asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or

[6] Certain of the Individual Defendants agreed to waive service as part of an Agreed Order granting a single consolidated response deadline for Plaintiff's First Amended Complaint. [Docs. 5 and 7]. McCullough was not named in the First Amended Complaint and did not join in that motion. [Docs. 2 and 5]. Although Plaintiff added him as a defendant to her Second Amended Complaint, Plaintiff has never caused a summons to be issued or attempted to serve McCullough separately, and the claims against him are therefore also due to be dismissed pursuant to Rules 12(b)(4) and 12(b)(5).

omissions, or which of the defendants the claim is brought against." *Thomas v. Univ. of Miss.*, 3:18-CV-62-GHD-RP (N.D. Miss. Dec. 17, 2018) (quoting *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015)).

Here, Mays Jackson has committed all four shotgun pleading infractions. First, her "cause of action" for "1983 Sex Discrimination" "realleges all prior paragraphs of the complaint if set out here in full," improperly resulting in a count that asserts a claim for relief jointly and severally against all defendants based on a combination of actions and facts asserted throughout the entirety of the complaint. *See* Compl. p. 14, ¶ 54. That amalgamation undermines Mays Jackson's attempt to set forth a plain statement showing that she is entitled to relief.

Mays Jackson's complaint also relies heavily on threadbare and conclusory assertions regarding unidentified efforts to "sabotage" her desire to serve as president and "discrimination on account of her sex." Compl. pp. 11, 14. She also includes immaterial facts not clearly tied to her claims against the Individual Defendants such as the "terms and conditions of her employment [with JSU]," the prior appointment of other female presidents at Mississippi's Historically Black Colleges and Universities, the possible application of Elayne Hayes Anthony to serve as president in 2023, the admission of Thompson to the Urban Higher Education program and the awarding of scholarship funding to him, and an interview Mays-Jackson apparently participated in to serve as the president at the University of South Carolina-Upstate. *See* Compl. pp. 11-14. Those conclusory and immaterial assertions are insufficient to put any of the Defendants on notice as to how their conduct gave rise to constitutional violation, and such ambiguity is insufficient to set forth a short and plain statement showing Plaintiff is entitled to relief.

Mays Jackson also asserts the bulk of her claims against an undifferentiated grouping of

"defendants" and six categories of IHL officials neither identified nor named as defendants ("officers, directors, vice presidents, agents, servants, or employees"), and specifically notes that "when it is alleged that Commissioner Rankins, IHL, IHL Board members in their official and individual capacities, committed any act or omission, it is meant that IHL's officers, directors, vice presidents, agents, servants or employees committed such acts or omissions and that at the time such act, commission or omission was committed, it was done with the full authorization, ratification or approval of IHL or was it [sic] done in the routine normal course and scope of employment of IHL officers, directors, vice presidents, agents, servants or employees unless otherwise stated in this Complaint." Compl. p. 14 ¶ 53. Her cause of action fails to tie her legal claims for relief back to the asserted actions of particular defendants, and merely asserts that she "had a clearly established right to be clear of discrimination on account of her sex," and that "[t]he conduct of Rankins and IHL board members was objectively unreasonable." *Id*. at p. 14. She then states that based on the misconduct of "defendants," she sustained damages. *Id*.

She also fails to separate her into a different count her claims or causes of action, and instead asserts merely that she was more qualified "when Hudson and Thompson were named President of JSU," despite the fact that those decisions were made by separate Boards of Trustees on separate considerations three years apart. *Id.* at p. 14, ¶ 55.

Mays Jackson's intentionally imprecise and undifferentiated pleading makes it impossible for any individual defendant to assess her claims on an individualized basis. She cannot disguise the insufficiencies in her claims by injecting ambiguity with scattershot allegations, and each defendant is entitled to a short and plain statement showing why Mays Jackson is entitled to relief as to that particular defendant. Mays Jackson has failed to do so, and her claims should be dismissed.

***4. Mays Jackson fails to identify any constitutional violation or violation of federal law in support of her Section 1983 claim.***

"A [S]ection 1983 complaint must plead specific facts and allege a cognizable constitutional violation in order to avoid dismissal for failure to state a claim." *Mills v. Crim. Dist. Ct. No. 3*, 837 F.2d 677, 678 (5th Cir. 1988). "Section 1983 is not itself a source of substantive rights; it merely provides a method for vindicating already conferred federal rights." *Bauer v. Texas*, 341 F.3d 352, 357 (5th Cir. 2003). To state a claim under § 1983, a plaintiff must "(1) allege a violation of rights secured by the Constitution or laws of the United States, and (3) demonstrate that the alleged deprivation was committed buy a person acting under color of state law." *Adams v. Harris Cnty. Jail*, 2024 U.S. Dist. LEXIS 45860, *7 (S.D. Tex. Mar. 15, 2024) (citing *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250 (1988)).

Here, Mays Jackson passingly references the Fourteenth Amendment in her jurisdictional averment but identifies no alleged constitutional or federal statutory violation in her causes of action. *See* Compl. pp. 1, 13-14. Rather than identifying any right secured by the Constitution or laws of the United States, Mays Jackson asserts only that her "gender was a motivating factor in the employment and compensation-related decisions made regarding her," and that she "had a clearly established right be clear of discrimination on account of her sex." Mays Jackson fails to identify the source of that claimed clearly established right, however, and the Court should therefore dismiss her claims for failing to identify the underlying substantive law upon which her claims are based.

***5. The Individual Defendants are entitled to qualified immunity.***

Above and beyond that facial deficiency, Plaintiff's claims against the Individual Defendants in their individual capacities should also be dismissed on grounds of the Individual

Defendants' qualified immunity. Designed to protect "all but the plainly incompetent or those who knowingly violate the law," *Malley v. Briggs*, 475 U.S. 335, 341 (1986), the qualified immunity defense "protects public officials from suit unless their conduct violates a clearly established constitutional right." *DePree v. Saunders*, 588 F.3d 282, 287 (5th Cir. 2009) (*citing Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003)). The qualified immunity standard "gives ample room for mistaken judgments." *DePree*, 588 F.3d 282 at 287 (*citing Malley*, 475 U.S. at 343); *see also Pearson v. Callahan*, 555 U.S. 223, 231 (2009) ("The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.").

Where a defendant invokes qualified immunity, the burden shifts to the plaintiff to show the defense is not available. *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010) (*citing McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002)). The question of qualified immunity is to be determined as a matter of law and requires a conduct-based inquiry, not an abstract legal or factual inquiry. *Elder v. Holloway*, 510 U.S. 510, 515-16 (1994).

To disprove the applicability of qualified immunity, a plaintiff must satisfy a two-prong test. At the dismissal stage, the court must determine whether the facts alleged make out a violation of a constitutional right. *Pearson*, 555 U.S. at 232. If so, the court must decide whether the right at question was clearly established at the time of the defendant's alleged misconduct. *Id.; Baker v. Pound*, 75 F.3d 190, 198 (5th Cir. 1996). The plaintiff must point to controlling authority or a "robust consensus of cases of persuasive authority" that placed some constitutional question faced by the Individual Defendants "beyond debate." *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014). The Court "must ask whether the law so clearly and unambiguously prohibited his conduct that ***every reasonable official*** would understand that what he is doing violates [the

law].” *Yul Chu v. Miss. State Univ.*, 901 F. Supp. 2d 761, 777 (N.D. Miss. 2012) (emphasis added).

Plaintiff cannot overcome the Individual Defendants’ qualified immunity. First, even taken at face value, Plaintiff’s Complaint fails to allege any of the Individual Defendants violated her constitutional rights. To state a claim of discrimination under the Equal Protection Clause, Plaintiff “must allege and prove that [she] received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent.” *Priester v. Lowndes Cty.*, 354 F.3d 414, 424 (5th Cir. 2004) (*citing Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001)). A discriminatory purpose “implies that the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group.” *Id*.

Moreover, Mississippi’s federal district courts have historically held that board members cannot be held individually liable under § 1983 for decisions made collectively by their governmental boards. *See*, e.g., *Owens v. City of Flowood*, 2017 U.S. Dist. LEXIS 8907, *2 (S.D. Miss. Jan. 23, 2017); *George v. Shelton*, 1999 U.S. Dist. LEXIS 3757, *2 (N.D. Miss. Mar. 18, 1999) (rejecting attempt to hold individual supervisor liable for decision made by board of supervisors as a whole).

As noted by the Northern District in *James v. Cleveland School District*, however, that absolute prohibition was scaled back by the Fifth Circuit’s ruling in *Sims v. City of Madisonville*, which clarified that § 1983 liability may attach to non-decisionmakers such as individual board members but only when the defendant’s conduct is a “but-for” cause of a constitutional violation. 2021 U.S. Dis. LEXIS 142536, *33 (N.D. Miss. Jul. 30, 2021) (construing *Sims,* 894 F.3d 632, 639 (5th Cir. 2018)). In that situation, a plaintiff must “demonstrate what *each* defendant did to

violate the asserted constitutional right." *Id*. (quoting *Pelichet v. Hertel*, 2021 U.S. Dist. LEXIS 58808, *7 (E.D. Mich. Mar. 29, 2021)); *see also Aschcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009) ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.")).

Mays Jackson has failed to do so here. The bulk of her allegations are aimed at IHL Board Commissioner Alfred Rankins, and those allegations focus entirely on the hiring of Hudson in 2020. She summarily asserts that Rankins was a friend of Hudson, that he "orchestrated Hudson's promotion to Interim President by passing over Mays-Jackson who supervised Hudson and was more qualified than Hudson," that he announced Hudson would not be permitted to apply for the position of president and that a national search would be conducted, that he "permitted Thompson and JSU employees Hudson supervised to investigate Hudson after he sent an inappropriate photo to a JSU employee," that he handpicked speakers to speak at an input meeting, and that he "knew or should have known that Hudson's violation of Title VII and Title IX rendered him unqualified to lead JSU." *See* Compl. pp. 6-7. None of those allegations, however, demonstrate what Rankins did to deprive Mays Jackson of a constitutional right. Even assuming the truth of Mays Jackson's allegations for purposes of this motion only, they at best suggest that Rankins sought to promote Hudson based on his alleged personal friendship. They do not plausibly suggest that the treatment of Mays Jackson stemmed from her status as a female.

Mays Jackson's allegations as to the remaining Individual Defendants are even more paltry. Curiously, her only reference to Tom Duff is that he did not vote to hire Hudson in November of 2020. *See* Pl.'s Compl. p. 6 ¶ 26. She includes no individual fact allegations at all as to Individual Defendants Jeannne Carter Luckey, Chip Morgan, J. Walt Starr, Alfred McNair,

Glenn McCullough, Shane Hooper, or Ford Dye. Glenn McCullough did not even serve as a Trustee for the IHL Board during the operative time period. Simply put, Mays Jackson has not pled what any of them did individually to violate her constitutional rights.

Individual Defendants Steven Cunningham, Ormella Cummings, Bruce Martin, Gee Ogletree, and Hal Parker are at least individually referenced, but those "allegations" are nothing more than legal conclusions masquerading as factual assertions. Without underlying facts, she asserts that Cunningham, Cummings, Martin, Ogletree, and Hal Parker served as members of the search committee and "sabotaged Mays-Jackson's efforts to become JSU's 13th President," that they "were aware of her 2021 EEOC Complaint," and that they "denied Mays-Jackson an interview but interviewed and voted with the other IHL board members to hire Thompson when Mays-Jackson was clearly more qualified than Thompson and Thompson had been treated more favorably than Mays-Jackson in the terms and conditions of her employment." *See* Compl. p. 6 ¶ 26, p. 11 ¶ 45, p. 13 ¶ 50. Mays-Jackson does not allege any facts to plausibly suggest that any of them violated the Constitution through their own individual actions or acted with a discriminatory purpose based on Mays-Jackson's sex.

The Individual Defendants are entitled to qualified immunity.

***6. The statute of limitations bars Mays Jackson's ability to base her claims on earlier decisions.***

While Mays Jackson appears to premise her claims only on the appointments of "Hudson and Thompson [as] President of JSU," she also includes a reference to the appointment of Hudson as Interim President in her "Statement of Facts" section. Compare Compl. p. 14, ¶ 55; p. 5, ¶ 20. To the extent Mays Jackson intends to base her claim on that appointment, however, her claim is time-barred.

For Section 1983 claims, the Court applies the forum state's statute of limitations for personal injury claims. *Smith v. Regional Transit Authority*, 827 F.3d 412, 421 (5th Cir. 2016). The applicable statute of limitations in this case is Mississippi's general limitations period of three years. Miss. Code Ann. § 15-1-49(1); *see also Dukes v. City of Lumberton*, Civil Action No. 2:17-CV-150-KS-MTP, 2017 WL 6373982, at *1 (S.D. Miss. Dec. 13, 2017). Mays Jackson, therefore, must have initiated this action within three years after her cause of action accrued or, rather, when she knew or had reason to know of her alleged injury. *Smith*, 827 F.3d at 421; *Dukes*, Civil Action No. 2:17-CV-150-KS-MTP, 2017 WL 6373982, at *1.

Mays Jackson filed her first complaint on November 16, 2023. Any alleged acts of discrimination that are said to have occurred before November 16, 2020, therefore, cannot form the basis for her Section 1983 claim. Mays Jackson alleges that Hudson was appointed Interim President after Bynum's resignation on February 10, 2020. Compl. at ¶¶ 19-22, 49. The statute of limitations bars Mays Jackson's claim to the extent she intends to rely upon Hudson being named Interim President of JSU.

***7. Conclusion.***

Despite her lack of individualized fact allegations, Mays Jackson has taken a scattershot approach, attempting to hold the Individual Defendants individually liable for failing to appoint her as the President of JSU on two occasions. Those presidential appointments were made by the IHL Board collectively, and Mays Jackson fails to allege that all of the Individual Defendants even participated in those votes, much less individually deprived her of some constitutional or federally-protected right. Mays Jackson's allegations fail to state any claim for relief as to the Individual Defendants, and the Individual Defendants are entitled to qualified immunity. This Court should dismiss her claims against the Individual Defendants with prejudice.

THIS, the 1st day of April 2024.

TOM DUFF, STEVEN CUNNINGHAM, BRUCE MARTIN, JEANNE CARTER LUCKEY, CHIP MORGAN, GEE OGLETREE, HAL PARKER, J. WALT STARR, ALFRED MCNAIR, JR., GLENN MCCULLOUGH, SHANE HOOPER, FORD DYE, and ALFRED RANKINS, JR., ALL IN THEIR INDIVIDUAL CAPACITIES

*/s/ J. Andrew Mauldin*
POPE S. MALLETTE (MB NO. 9836)
J. ANDREW MAULDIN (MB NO. 104227)
*Attorneys for the Individual Defendants*

OF COUNSEL:

MAYO MALLETTE PLLC
2094 Old Taylor Road, Suite 200
Oxford, Mississippi 38655
Tel: (662) 236-0055 | Fax: (662) 236-0035
*pmallette@mayomallette.com*
*dmauldin@mayomallette.com*