

# THE WINFIELD LAW FIRM, P.A.

224 East Main Street
Post Office Box 80281
Starkville, MS 39759
Telephone: 662.323.3984
Facsimile: 662.323.3920

**CHARLES E. WINFIELD**
Licensed in Mississippi and Texas

cwinfield@winfieldlawfirm.com
Direct: 662.323.9231

April 27, 2021

U.S. Equal Employment Opportunity Commission
Jackson Area Office
Dr. A. H. McCoy Federal Building
100 West Capitol Street, Suite 338
Jackson, MS 39269

Re: EEOC Charge No. 423-2021-00492
Charging Party: Debra Mays-Jackson
Respondent: Mississippi Institutions of Higher Learning

Dear Sirs and Madams:

This letter will serve as the position statement of the Mississippi Board of Trustees of State Institutions of Higher Learning ("IHL") in the above-referenced matter.

Dr. Debra Mays-Jackson filed her Charge of Discrimination against IHL and Jackson State University ("JSU") on February 10, 2021, alleging discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, based on her sex (female), and in violation of the Age Discrimination in Employment Act ("ADEA") based on her age (53). Although Dr. Mays-Jackson complains generally about the conditions of her existing employment at JSU, the only relevant complaint against IHL appears to be that she was not allowed to apply for the position of president at JSU.

IHL denies all of Dr. Mays-Jackson's allegations. Neither sex nor age has ever been a factor or consideration in any employment decision related to Dr. Mays-Jackson, nor was it a factor in IHL's decision to offer the position of president of JSU to Thomas Hudson, a veteran JSU administrator who was hired to that position in 2020. Mays-Jackson was not barred from applying to the position; rather, no applications were accepted, as Hudson was hired pursuant to IHL policy allowing the hiring of an individual known to IHL without an extended application or search process.


EXHIBIT "3"

U.S. Equal Employment Opportunity Commission
April 27, 2021
Page 2



## I.
## FACTUAL BACKGROUND

**A.   IHL**

IHL is the constitutional governing body responsible for policy and financial oversight of Mississippi's eight public institutions of higher learning. These include Alcorn State University, Delta State University, Jackson State University, Mississippi State University, Mississippi University for Women, Mississippi Valley State University, The University of Mississippi, and The University of Southern Mississippi, including the University of Mississippi Medical Center, Mississippi Cooperative Extension Service, Mississippi Agricultural, Forestry and Veterinary Medicine, 23 satellite centers, and various other locations throughout the state.

IHL is governed by twelve board members, with four representing each of Mississippi's three state supreme court districts. Board members are appointed by the Governor and confirmed by the Mississippi Senate. IHL employs a Commissioner of Higher Education, who is appointed by the Board and, along with the university presidents/chancellor, is responsible for administering the Board's policies at each of the universities that IHL oversees.

IHL is an equal opportunity employer. It is a priority of IHL to ensure that employees and applicants are treated fairly and equally, without regard to their race, sex, national origin, age, or other protected classes. IHL's policies confirm this commitment to equal employment opportunity and diversity. The applicable policy states, in relevant part, as follows:

> The Board shall administer its policies and programs without regard for race, age, sex, religion, national origin, handicapped, or veteran status. The Board has been and remains committed to the maintenance of equal opportunity for all people. Affirmative Action shall be taken to ensure that the Board does not discriminate in any aspect of employment including advertisement, recruitment, selection, promotion, demotion, transfer, compensation, and selection for training.

See Policy 801.01 Equal Opportunity Commission and Affirmative Action Statement.

**B.   IEO HIRING PROCEDURES**

IHL is tasked within hiring the Institutional Executive Officer ("IEO") for each of the state's public universities, including JSU. See IHL Policy 201.0509(A). The process for hiring an IEO (in this case, the university president of JSU) is governed by IHL Policy 201.0509 Institutional Executive Officer / Commissioner of Higher Education Search Process (the "IEO Hiring Policy").



U.S. Equal Employment Opportunity Commission
April 27, 2021
Page 3

Pursuant to the IEO Hiring Policy, when confronted with an opening, IHL's president appoints a committee of Board members to manage the search for the IEO. All Board members desiring to serve on this committee have the opportunity to do so, and one committee member is appointed as the chairperson. Although the IEO Hiring Policy allows for an extended search process, it specifically provides that "[r]ather than engaging in the extended search process . . ., the Board may, in its discretion, interview candidates that are known to the Board and consider their selection in accordance with the expedited process described" in that policy. A preferred candidate who is interviewed in accordance with the expedited process must be confirmed by an affirmative vote of at least nine Board members.

There are three historically black universities within the IHL system, Alcorn State University, Mississippi Valley State University, and JSU. IHL's selection of the presidents for these institutions reflects a lack of discrimination on the basis of age or sex. Dr. Jerryl Briggs, a 59 year old male, serves as president of Mississippi Valley State University. He was unanimously selected for this position during 2017. Dr. Felicia M. Nave, a 46 year old female, was unanimously selected by IHL's Board to serve as Alcorn State University's president during 2019. Hudson, a 43 year old male, was unanimously selected by IHL's Board to serve as president of JSU during 2020. In sum, IHL has appointed presidents at other institutions who are female (Nave) and older (Briggs) than Mays-Jackson.[1]

C.   THOMAS HUDSON'S HIRING AS JSU'S IEO

On February 10, 2020, IHL named Hudson as the acting president of JSU. Nine months later, on November 19, 2020, IHL named Hudson as president of the university. Hudson was well known to IHL at the time of his appointment as president, and his appointment was, thus, authorized by the IEO Hiring Policy. As acting president, Hudson had provided leadership during the COVID-19 pandemic and the university's Southern Association of Colleges and Schools Commission on Colleges reaffirmation process. He had also helped to improve the university's financial position, an issue of long-standing concern for IHL. Moreover, Hudson was widely praised for bringing stability to the JSU campus after its prior president had resigned following a widely-reported arrest.

Hudson was well-qualified for the position. As Special Assistant to the President and Chief Diversity Officer, Hudson served on the executive cabinet and provided guidance to senior leadership on all topics related to the university's future course and trajectory. With the Division of Human Resources and Office of General Counsel under his purview, Hudson oversaw institutional EEO and Title IX implementation and collaborated with other executive administrators on matters of curriculum, guidelines, and practices. He also established collaborative partnerships with the University Veterans Center and Office

---

[1] Moreover, Dr. Glen Boyce, who IHL appointed as chancellor at the University of Mississippi less than two years ago, is 63 years old. Dr. Nora Miller, who was appointed to serve as the president of Mississippi University for Women in 2018 was 57 years old at the time of her appointment.



U.S. Equal Employment Opportunity Commission
April 27, 2021
Page 4

of Disability Services to address the underrepresentation of employees from these groups. He also served as the president's liaison for the Division of Athletics.

Prior to his appointment as president, Hudson also conducted university-wide labor utilization analysis to determine areas of improvement relating to implementation of the university affirmative action plan. He also reorganized the Staff Development Center and assisted in developing courses in employee relations, development, and compliance. He had also served as Chief Operating Officer/Chief Diversity Officer, Chief Diversity and EEO Officer/Title IX Coordinator. As Chief Operating Officer, Hudson implemented cost-saving measures that resulted in a 10 percent decrease in the university's operational budget, coordinated academic and administrative restructuring efforts, resulting in an annual savings of $4 million, and led institutional efforts that changed a projected year-end deficit to an approximate $3 million cash balance.

Appointed as the inaugural Chief Diversity and Equal Opportunity Officer at Jackson State, Hudson received the Presidential Creative Award Grant for efforts in designing a program to bring awareness of interpersonal violence prevention to the student body, and he designed and implemented the first university-wide training to eliminate implicit bias for search committees. In addition, he developed strategies for increasing the number of female faculty members in STEM disciplines, resulting in a 30 percent increase in hiring of women in these disciplines over a three-year period.

Hudson holds a bachelor's degree in political science from JSU and a law degree from the University of Mississippi. Before joining the staff at JSU, Hudson founded his own law practice and served as an EEO specialist for the Department of Homeland Security/FEMA in Clinton.

Hudson serves as Co-Chairperson on the JSU Strategic Planning Committee and Vice Chairperson of the university system's Chief Diversity Officers' Council. He is a member of the Margaret Walker Alexander Center Board of Directors and the JSU Athletics Hall of Fame Foundation Board of Directors. He served as the Bias and Policy Lead for the National Science Foundation Advance Grant at JSU from 2013 to 2017 and served as Chairperson of the Director of Disability Services Search Committee in 2016.

## II.
## ANALYSIS

In her Charge, Mays-Jackson essentially makes three arguments relevant to IHL. First, she claims that she was denied an opportunity to apply for the position in violation of IHL policy. Second, she argues that she was more qualified than Hudson. Third, she implies that Hudson was ineligible for consideration for the position due to his service as acting president. Mays-Jackson's arguments miss the mark.

Although Mays-Jackson was not afforded an opportunity to apply for the JSU president's position, no such opportunity was required. As noted above, the IEO Hiring



U.S. Equal Employment Opportunity Commission
April 27, 2021
Page 5

Policy plainly allows IHL to forego an extended search process and to offer the presidency to any person known to them. Hudson clearly met this standard. He had been serving as JSU's acting president and, in a time of recurring budget concerns at JSU, Hudson had brough stability to the institution's finances. This had been a repeated matter of concern for IHL during the term of JSU's prior president. Moreover, Mays-Jackson cannot show that IHL's decision to forego the extended hiring process was the result of any discriminatory intent: the decision applied equally to *all* persons other than Hudson, young or old, male or female. Mays-Jackson's sex and age had no bearing on the decision.

Moreover, IHL flatly rejects the notion that Mays-Jackson was more qualified than Hudson, whose lengthy accomplishments are noted above. More to the point, however, IHL rightly considered Hudson to possess a highly desired ability to help address JSU's financial difficulties, and IHL's experiences with him during his service as acting president affirmed these views.

Finally, in implying that Hudson was not authorized to be appointed as JSU's president, Mays-Jackson reveals what appears to be a misunderstanding of policy. Although IHL policy does prohibit a person who serves as an interim university president from being hired as the president in some circumstances, this limitation applies only in cases where a person serves as interim IEO "after the formal circulation of the advertisement requesting applications as IEO at a university." The policy plainly "does not prohibit consideration during the search process of an individual who has completed service as an interim or acting IEO prior to the circulation of the formal advertisement for applications and who discontinues service at such time." See Policy 201.0510 Application by Interim Institutional Executive Officer for Institutional Executive Officer Position. Here, there was no formal advertisement, and there was no prohibition, through policy or otherwise, against IHL designating Hudson as president.

In sum, Mays-Jackson cannot state a prima facie case of discrimination against IHL, and she fails to articulate, much less produce, any evidence to support her claim that she was not selected as JSU's president due to her sex or age. In fact, such a suggestion is plainly contrary to IHL's established hiring record. For these reasons, we respectfully request that the Commission issue a no-cause finding in this matter.

This position statement is submitted to assist the Commission in its investigation and is based on the undersigned's knowledge of the facts at the time it was prepared. IHL expressly reserves the right to submit additional and/or alternate facts or arguments as may be warranted by subsequently-discovered information.

Sincerely,

Charles E. Winfield